**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CONNER LYNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 4:26-cv-01395** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HST-STL LLC d/b/a COMPASS HEALTH CONSULTANTS,** | ) | |
| | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | | |

## COMPLAINT

Plaintiff, Conner Lynn ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against HST-STL LLC d/b/a Compass Health Consultants ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), seeking redress for Defendant's discrimination against Plaintiff on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12101, et seq.

3. Venue of this action properly lies in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have occurred or have been complied with.

5. A charge of employment discrimination was filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 560-2026-03865 (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC, issued on August 7, 2026 (attached hereto as Exhibit "B").

7. Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. At all times relevant to the allegations of this Complaint, Plaintiff, Conner Lynn, was a natural person, over 18-years-of-age, who resided in Madison County, Illinois.

9. At all times relevant to the allegations of this Complaint, Defendant, HST-STL LLC d/b/a Compass Health Consultants, was a limited liability company doing business in and for St. Charles County, Missouri, located at 1985 Bluestone Dr, Saint Charles, Missouri 63303.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA, 42 U.S.C. § 12111(4).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by the ADA, 42 U.S.C. § 12101, *et seq.*, and has been engaged in an industry affecting commerce within the meaning of the ADA, 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as a Commissions Coordinator from on or about December 15, 2025, until Plaintiff's unlawful termination on or about April 27, 2026.

13. As a Commissions Coordinator, Plaintiff's duties included, but were not limited to, processing timely pay cycles for carriers, issuing commission-based payments to 1099 health insurance agents, entering administrative changes, and troubleshooting agent pay inquiries via email. Plaintiff reported to Christina Kluber, Defendant's Director of Finance.

14. In the weeks leading up to April 2026, Plaintiff successfully completed his probationary period, received a positive performance review, was granted a pay increase from $24.00 per hour to $25.00 per hour, and was given additional responsibilities.

15. At no point prior to April 23, 2026, was Plaintiff disciplined, counseled, or informed that his performance was deficient, including any concern regarding his level of independence. No manager, supervisor, or director had ever raised concerns about Plaintiff's job performance prior to April 23, 2026.

16. At all times relevant to this Complaint, Plaintiff suffered from Obsessive-Compulsive Disorder ("OCD"), a physical and/or mental impairment that substantially limits one or more of Plaintiff's major life activities. Plaintiff's OCD was confirmed by his treating physician, Dr. Michael G. Guignon Jr., in a letter dated April 23, 2026.

17. Plaintiff's OCD manifests through symptoms including stress and anxiety, which Plaintiff sought to manage through the workplace accommodation described below.

18. Notwithstanding his OCD, Plaintiff was able to perform all essential functions of his position, provided he received brief periodic guidance to help manage the stress and anxiety associated with his condition.

19. At all times relevant to this Complaint, Plaintiff was "qualified individual" as defined under the ADA.

20. Plaintiff performed the essential functions of his position throughout his

employment, including in the weeks immediately preceding his disability disclosure, during which he received a positive performance review and a pay increase.

21. On April 23, 2026, Plaintiff met in person with Holly Adkison, Defendant's HR Director, and formally disclosed, for the first time, that he has OCD.

22. Plaintiff requested reasonable accommodation consisting of approximately fifteen to twenty minutes per week of in-person or verbal guidance from a manager or team lead to review certain tasks at his workstation, to help manage the stress and anxiety associated with his OCD. Plaintiff made clear to Holly Adkison that he was fully capable of performing his job duties with or without the requested accommodation.

23. Holly Adkison appeared confused by Plaintiff's request and attempted to redirect the conversation toward whether Plaintiff needed more written instructions, which Plaintiff expressly clarified was not his need.

24. Holly Adkison stated that she would need to consult with Christina Kluber and would follow up with Plaintiff.

25. No further discussion or interactive process occurred following Plaintiff's April 23, 2026, accommodation request.

26. Plaintiff had prepared a letter from his physician confirming his OCD diagnosis and the necessity of the requested accommodation, but Holly Adkison told Plaintiff that the letter was not necessary and declined to accept it.

27. Defendant was aware of Plaintiff's disability and need for accommodation during Plaintiff's employment.

28. Defendant did not discuss potential task redistribution or temporary modifications.

29. Defendant did not propose any alternative accommodation.

30. Defendant's actions constituted disability-based discrimination.

31. Defendant did not engage in a meaningful interactive process regarding Plaintiff's request for accommodation.

32. Defendant failed to accommodate Plaintiff's disability, despite Plaintiff's reasonable request for approximately fifteen to twenty minutes per week of in-person or verbal guidance from a manager or team lead to review certain tasks at his workstation.

33. Plaintiff engaged in protected activity by disclosing his disability.

34. Plaintiff engaged in protected activity by requesting reasonable accommodation.

35. On April 24, 2026, the day after Plaintiff requested a reasonable accommodation, Plaintiff was called into a meeting with Holly Adkison and Mike Rubenstein, Defendant's Vice President of Agency Operations, and was presented with a three-page Performance Improvement Plan ("PIP") alleging that he was "not working independently." This was the first time any such concern had ever been raised with Plaintiff.

36. The PIP contained no specific examples, no measurable performance standards, and no clear expectations for improvement. The allegation that Plaintiff was "not working independently" directly contradicted the nature of Plaintiff's accommodation request, which sought only minimal weekly guidance.

37. Christina Kluber, Plaintiff's direct supervisor and a relevant decision-maker, was not present at the PIP meeting, worked remotely, and had never previously discussed any performance concerns with Plaintiff.

38. Plaintiff requested the opportunity to review the PIP and speak with Christina Kluber before signing it. Holly Adkison denied this request and told Plaintiff that if he did not sign the PIP that same day, he would be terminated. Under this threat, Plaintiff signed the PIP without

a meaningful opportunity to review or respond to it.

39. Holly Adkison had not communicated Plaintiff's disability or accommodation request to Mike Rubenstein, who appeared confused and, even after an explanation, did not appear to understand what OCD was.

40. At the end of the PIP meeting, Plaintiff asked Holly Adkison whether the PIP was a good-faith performance tool or a means to document his termination. Holly Adkison told Plaintiff that the PIP was genuinely in good faith and that his employment was not at risk.

41. On April 27, 2026, at approximately 9:15 a.m., Plaintiff was called into a meeting with Holly Adkison and Mike Rubenstein. During this meeting, Mike Rubenstein stated that "after discussing over the weekend, this isn't going to work," and terminated Plaintiff's employment effective immediately.

42. When Plaintiff asked for a reason for his termination, Mike Rubenstein stated only that "today is your last day" and refused to provide further explanation. Plaintiff's personal belongings were brought down from his workstation, his request to speak with his supervisor was denied, and he was escorted out of the building by Mike Rubenstein.

43. Plaintiff was terminated before being given any opportunity to improve under the PIP. Less than forty-eight hours elapsed between Plaintiff's request for reasonable accommodation on April 23, 2026, and Plaintiff's termination on April 27, 2026.

44. Defendant provided no legitimate, non-discriminatory reason for Plaintiff's termination, refusing to state any explanation beyond stating that "today is your last day."

45. Plaintiff was retaliated against, and his employment was ultimately terminated for disclosing his disability and requesting reasonable accommodation, and for exercising his protected rights.

46. Plaintiff met or exceeded Defendant's performance expectations during the entire duration of his employment.

47. Plaintiff was targeted for termination because of his disability, and for engaging in protected activity.

48. Plaintiff suffered multiple adverse employment actions including but not limited to being terminated.

49. There is a basis for employer liability for the discrimination and retaliation that Plaintiff was subjected to.

50. Plaintiff can show that he engaged in statutorily protected activity, a necessary component of his retaliation claim, because Plaintiff disclosed his OCD diagnosis to Defendant and requested reasonable accommodation on April 23, 2026.

51. The temporal proximity between Plaintiff's protected activity and his termination gives rise to a strong inference that the termination was motivated by his protected class and engagement in protected activity.

52. At all relevant times, Mike Rubenstein (Vice President of Agency Operations) and Holly Adkison (HR Director) were managerial employees of Defendant with the authority to make and implement final employment decisions, including the authority to terminate Plaintiff's employment.

53. Accordingly, because the discrimination, failure to accommodate, and retaliation alleged herein were carried out by Plaintiff's managers acting within the scope of their employment with Defendant, Defendant is strictly liable for their conduct.

54. As a result of his termination, Plaintiff's health insurance benefits were terminated, and Plaintiff has been unable to seek mental health treatment due to the loss of insurance and

resulting financial constraints.

**COUNT I**
**Violations of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

55. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

56. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA").

57. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

58. Plaintiff was a qualified individual with a disability under the ADA.

59. Plaintiff met or exceeded performance expectations.

60. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability and Plaintiff's engagement in protected activity.

61. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

62. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

63. Under the ADA, Defendant is strictly liable for the unlawful discrimination committed by Mike Rubenstein and Holly Adkison.

64. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

65. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

66. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA").

67. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

68. Plaintiff was a qualified individual with a disability under the ADA.

69. Plaintiff was qualified for his position with or without reasonable accommodation.

70. Defendant was aware of the disability and the need for accommodation.

71. Defendant failed to engage in the interactive process to determine the appropriate accommodation after Plaintiff requested reasonable accommodation.

72. Plaintiff's reasonable accommodation that was requested, approximately fifteen to twenty minutes per week of a manager's or team lead's time, was minimal in nature and was not an undue burden on Defendant.

73. Defendant did not accommodate Plaintiff's disability.

74. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

75. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Retaliation)**

76. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

77. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff based on Plaintiff's disclosure of his disability and request for a reasonable accommodation, thereby violating the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA").

78. Plaintiff was a member of a protected class under the ADA.

79. During Plaintiff's employment with Defendant, Plaintiff disclosed his disability and requested reasonable accommodation.

80. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the ADA.

81. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

82. Specifically, Plaintiff was placed on a Performance Improvement Plan the day after he engaged in protected activity, and was terminated on the next business day, less than forty-eight hours after engaging in protected activity.

83. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

84. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated: August 31, 2026.

*/s/ Nathan C. Volheim*
**NATHAN C. VOLHEIM, ESQ.**
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: 630-575-8181
nvolheim@sulaimanlaw.com
*Counsel for Plaintiff*